# Exhibit A

# UNITED STATES DISTRICT COURT

_____ NORTHERN _____ DISTRICT OF _____ ILLINOIS, EASTERN DIVISION _____

UNITED STATES OF AMERICA

v.

ROLANDO SHACKELFORD

**WARRANT FOR ARREST**

CASE NUMBER: _02 CR 1254_

To:   The United States Marshal
and any Authorized United States Officer

    YOU ARE HEREBY COMMANDED to arrest    Rolando Shackelford _____

                                                                              Name

and bring him or her forthwith to the nearest magistrate to answer a(n)

___Indictment   ___Information   _X_ Complaint   ___Order of court   ___Violation Notice   ___Probation Violation Petition

charging him or her with  (brief description of offense)

knowingly and with intent to defraud conspiring to use counterfeit access device

in violation of Title ___18_____ United States Code, Section(s)  _1029(a)(1) and (b)(2)_____

Michael T. Mason
Name of Issuing Officer

U.S. MAGISTRATE JUDGE
Title of Issuing Officer

_Michael T Mason_
Signature of Issuing Officer

December 18, 2002 at Chicago, IL
Date and Location

_____
(By) Deputy Clerk

Bail fixed at $ _____ by _____
                                                              Name of Judicial Officer

| RETURN | | |
| --- | --- | --- |
| This warrant was received and executed with the arrest of the above-named defendant at _____ | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

# Exhibit B

# UNITED STATES DISTRICT COURT

__NORTHERN__    DISTRICT OF    __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

ROLANDO SHACKELFORD

(Name and Address of Defendant)

**RECEIVED**

DEC 1 8 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MAGISTRATE JUDGE MASON

**CRIMINAL COMPLAINT**

**CASE NUMBER:** 02CR1254

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.   On or about __January 16, 1998,__ in __Cook__ County, in the _____ __Northern__

District of _____ __Illinois__ _____ defendant(s) did, (Track Statutory Language of Offense)

knowingly and with intent to defraud did conspire to use a counterfeit access device

in violation of Title ____ __18__ ____ United States Code, Section(s) __1029(a)(1) and (b)(2)__ .

I further state that I am a(n) __Special Agent, United States Secret Service,__ and that this complaint is based on
                                                      Official Title
the following facts:

Continued on the attached sheet and made a part hereof: __X__ Yes _____ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

__December 18, 2002__ _____
Date

__Magistrate Judge Michael T. Mason__ _____
Name & Title of Judicial Officer

at __Chicago, Illinois__ _____
City and State

_Michael Mason_ _____
Signature of Judicial Officer

## AFFIDAVIT

I, Paul A. Meyer, being first duly sworn on oath, depose and state as follows:

1.   I am a Special Agent of the United states Secret Service and have been so employed for approximately one and one-half years. I am presently assigned to the Chicago office of the Secret Service.   I investigate financial crimes, including credit card fraud.

2.   This affidavit is submitted in support of an arrest warrant and complaint charging a violation of Title 18, United States Code, Section 1029(a)(1).

3.   The facts set forth below are based on my own personal knowledge, my review of investigative reports prepared by other law enforcement officers, and information provided by other law enforcement officers.   Since this affidavit is submitted for the limited purpose of establishing probable cause to arrest the aforementioned individual, this affidavit does not contain a detailed account of everything that I know or other law enforcement officers know about the individual and events described herein. The affidavit sets forth only those facts, which I believe are necessary to establish the required probable cause for arrest.

4.   On 10/10/1997, Detective Brad Borys, Lansing Police Department, provided the following information regarding counterfeit American Express credit cards:

a.   An individual cooperating with a local Police

Department (hereinafter the "CI") related that an individual known to the CI as "Ro" was selling American Express credit cards for approximately $1,000 USC, with a credit limit of approximately $10,000.

   b.  The CI related "Ro" would even emboss the buyer's real name on the credit card.

   c.  The CI mentioned "Ro" showed him a blank green American Express credit card without the account number or the card member's name embossed on the credit card.

   d.  The CI recalled the front of the credit card had four numbers printed on the right side.  The CI stated the numbers were "8673".

   e.  According to the CI, "Ro" was arrested on federal charges for cloning cellular telephones.

   f.  Johnson provided the following description for "Ro":
   Male/Black; 20-30 years old; 5'6" to 5'8"; 150-160lbs;
   Black hair, Box cut; wears a Mason ring;
   Possible telephone numbers: Pager: 312/370-1480;
   Work: 708/389-1609 IDH Financial Services, Midlothian, IL

   g.  On 11/12/1997, the writer conducted MCI record check reference Rolando Shackelford.  Shackelford is of record with this Agency under case number 201-779-129084.  Subject investigation is for cloning cellular telephones at L&A Communications, 274 E. 159th Street, Harvey, IL.

   5.  On 10/14/1997, Joseph Gannon, Chief Investigator, American

Express, World Financial Center, New York, NY, 212/640-2605, provided the following information concerning counterfeit American Express credit cards with four digit batch code (4DBC) of 8673. Gannon also informed the writer that on 8/12/1997, Best Buy, 1201 Hammond Drive, Atlanta, GA, seized a counterfeit American Express credit card with the 4DBC OF 8673, Account number 3739-865579-81007, embossed in the name John Williams.

6.  On 11/12/1997, Joseph Gannon relinquished custody of five (5) counterfeit American Express credit cards with 4DBC OF 8673. Examination of the above-mentioned credit cards indicates two (2) generations of cards. While examining the credit cards, the following investigative lead was developed:

a.  On the upper right corner of the cards ULTRA CARD II is printed. ULTRA CARD II is the copyright trademark for digital identification card systems produced by Fargo Electronics, Eden Prairie, MN.

7.  On 11/12/1997, Jeffrey D. Upin, Legal Counsel, Fargo Electronics, 7901 Flying Cloud Drive, Eden Prairie, MN, 612/941-9470, provided the following information:

a.  Upin explained the ULTRA CARD II is white plastic card stock with a mag strip on the reverse side of the card which is used in conjunction with a digital computer printer that allows the user to produced photo identification cards with digitize photographs.

8.  On January 16, 1998, officers of the Matteson Police

Department, Matteson, IL, were dispatched to the Foot Locker Store, Lincoln Mall, Matteson, IL, to investigate the fraudulent use of a counterfeit American Express credit card.

    a. Officers learned from an employee of the Foot Locker Store that a Black/Female, later identified as Angela Powell, used an American Express Credit card, account number 3732 294065 130065, embossed in the name Kristie Savage, to purchase $393.26 in merchandise.

    b. Powell presented the above-mentioned credit card and signed the credit card receipt.

    c. Powell was accomplished by a Black/Male later identified as Rolando Shackelford.

    d. Powell and Shackelford were observed leaving the store together, with Shackelford carrying the bag with the merchandise.

    e. After Powell and Shackelford left the store, the manager became suspicious of the transaction and telephoned American Express for name and account number verification.

    f. Manager learned the name and account number did not match--the above-mentioned account number is listed to Jeremy A. Stone.

    g. Powell and Shackelford were observed walking through the lower level of the mall.

    h. Powell and Shackelford were then observed walking in different directions.

i.   Powell was seen walking towards the upper level in the direction of Carsons.

j.   Shackelford was observed exiting the mall, carrying the bag with the merchandise via the lower level west parking lot exit.

k.   Shackelford was observed entering the mall less than two (2) minutes later without the merchandise.

9.   On January 16, 1998, officers of the Matteson Police Department, Matteson, IL, arrested Rolando Shackelford and Angela Powell at the Lincoln Mall for fraudulent use of counterfeit American Express credit cards.

a.   Powell was in possession of two (2) counterfeit American Express credit cards with the 4DBC OF 8673 embossed in the name Kristie Savage.

b.   Shackelford was in possession of one (1) counterfeit American Express credit card with the 4DBC OF 8673 embossed in the name Robert Davis.

c.   Examination of the above-mentioned cards revealed the trademark "ULTRA CARD II".

10.   On 1/11/1998, Angela Powell was interviewed and admitted that Shackelford had provided her with the fraudulent credit card in the name of Kristie Savage, which she had used to purchase the merchandise at the Foot Locker Store.

Based on the foregoing, I believe that probable cause exists that Rolando Shackelford has violated Title 18, United States Code,

Section 1029(a)(1).

_____
Paul A. Meyer, Special Agent
United States Secret Service

Signed and Sworn to before me
this _18th_ day of December, 2002

_____
United States Magistrate Judge

# Exhibit C

# MEMORANDUM OF RECORD

| TO | DATE |
|---|---|
| **ATSAIC Tom W. Tilton** | **12/19/02** |

| INFORMATION RECORDED BY | FILE |
|---|---|
| **SA Paul A. Meyer** | **J-201-769-128927-S** |

SUBJECT
**Search Warrant of 14611 S. Kilbourn, Midlothian, IL-Shackleford residence**

| CONTACT | OFFICE | TELEPHONE NO. |
|---|---|---|
| **SA Paul A. Meyer** | **Chicago Field Office** | **(312)353-5431** |

DETAILS

On 12/19/02, Agents (SA's Tilton, Beeler, Drapalik, McCabe, Niemira, Henderhan, Bush, and myself) attempted to served an arrest warrant(02-CR-1254) on suspect Rolando Shackleford at 14611 S. Kilbourn Ave., Midlothian, IL 60445. This address was received from Shackleford's former probation officer Jennifer Taporski(312)435-5741, as Shackleford's home address. The following is a summary of what occurred:

At 6:05 a.m. on 12/19/02 I knocked and announced our presence at the residence of 14611 S. Kilbourn Ave., Midlothian, IL. A woman by the name of Franchon Foster answered the door and identified herself as Shackleford's wife. I asked if Rolando was there Foster answered "no". I then asked where Shackleford was and Foster answered "she didn't know".

I then asked if we could enter the home to verify that Shackleford was not there. Foster gave permission for a search to be conducted of the home.

Upon entering the home SA Brad Beeler, a Group Leader with the Financial Crimes Squad, entered a rear office room just past the living room area. Beeler noticed several computers, two credit card skimmers, a DSS(Satelite TV) encoder that was plugged in with the light on and a DSS card inserted into the computer, two DSS cards on desk next to the computer, and several other items and equipment used in making various counterfeit items. Through his past experience Beeler immediately recognized this set up to be a counterfeiting access device plant(s).

After this discovery, I called AUSA Scott Levine and notified him of what was found. We met at the Dirkson Federal Building and immediately began drafting a search warrant for the rear office and garage of the residence of 14611 S. Kilbourn Ave., Midlothian, IL.

# Exhibit D

# UNITED STATES DISTRICT COURT

_____ NORTHERN _____ DISTRICT OF ___ ILLINOIS, EASTERN DIVISION

In the Matter of the Search of

(Name,address or brief description of person, property or premises to be searched)

The rear office and the unattached
garage located at 14611 Kilbourn,          SEARCH WARRANT
Midlothian, Illinois
                                           CASE NUMBER:

                                           02 M 0465

TO:___ Paul A. Meyer _____

_____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by___ Paul A. Meyer _____ who

has reason to believe that __ on the person of or X on the premises known as (name,description

and/or location)

the rear office and the unattached garage located at 14611 Kilbourn, Midlothian, Illinois,

in the _____ Northern _____ District of ___ Illinois, Eastern Division ___ there

is now concealed a certain person or property, namely (describe the person or property to be seized)

                          SEE ATTACHMENT A

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to
believe that the person or property so described is now concealed on the person or premises
above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before ___ December 20, 2002 _____
                                                              Date
(not to exceed 10 days) the person or place named above for the person or property specified,
serving this warrant and making the search (in the daytime - 6:00 A.M. to 10:00 P.M.) (at any
time in the day or night as I find reasonable cause has been established) and if the person
or property be found there to seize same, leaving a copy of this warrant and receipt for the
person or property taken, and prepare a written inventory of the person or property seized
and promptly return this warrant to _ U.S. Magistrate Judge _____
as required by law. 11:28 A.M                              U.S. Judge or Magistrate

DEC 1 9 2002 _____ at  Chicago, Illinois _____
Date and Time Issued                          City and State

Michael T. Mason, U.S. Magistrate Judge ___        [signature]
Name & Title of Judicial Officer                   Signature of Judicial Officer

## ATTACHMENT A

Any and all evidence and instrumentalities of violation of Title 18, United States Code, Section 1029, found in the rear office or the garage at 14611 Kilbourn, Midlothian, Illinois, including, but not limited to:

1.    Any and all records and documents relating to the manufacture and/or distribution of counterfeit credit cards and/or access devices.

2.    Any and all records and documents relating to the production, distribution, and/or use of counterfeit access device.

3.    Any and all records and documents listing names, addresses or credit card account numbers and/or bank account information of possible victims or suspects.

4.    Any and all records and documents related to assets acquire by the use of proceeds obtained from the unlawful activity in violation of Title 18, United States Code, Sections 1029.

5.    Any and all records and documents pertaining to the acquisition, transfer, concealment and expenditure of proceeds from the above-specified unlawful activities, including records, memoranda, letters, notes, invoices, records of real estate and personal property transactions, bank statements and related account records, financial statements, and loan applications.

6.    The terms "records" and "documents" as used above include all of the foregoing items of evidence in whatever form and by whatever means such records, documents, their drafts, or their modifications may have been created or stored, including (but not limited to) any electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact discs), or any information on an electronic or magnetic storage device (such as floppy diskettes, hard disks, CD-ROMs, optical disks, tapes, and printer buffers).

7.    Any and all computer passwords and data security devices. Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or programming code. A password (a string or alphanumeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, ships, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt,

compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

8.   Computers and computer records will be searched by means of an analysis of electronically stored data through several different techniques.  Such techniques may include, but shall not be limited to, surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the marking it contains and opening a drawer believed to contain pertinent files); "opening" or reading the first few "pages" of such files in order to determine their precise contents; "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; or performing electronic "key-word" searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

9.   Skimmers, encoders, the electronically stored content of encoders, the electronically stored content of computers, printers, fax machines, safes, the content of safes, scanners, typewriters, and cameras.

# UNITED STATES DISTRICT COURT

<u>NORTHERN</u> DISTRICT OF <u>ILLINOIS, EASTERN DIVISION</u>

In the Matter of the Search of

**RECEIVED**

(Name, address or brief description of person, property or premises to be searched)

DEC 1 9 2002

The rear office and the unattached
garage located at 14611 Kilbourn,
Midlothian, Illinois

MICHAEL T. MASON
UNITED STATES MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT

CASE NUMBER: **02 M 0465**

I, <u>Paul A. Meyer</u>                              , being duly sworn depose and say:

I am a(n) <u>Special Agent, United States Secret Service</u>

_____ and have reason to believe

that ___ on the person of or _X_ on the property or premises known as (name, description and/or location)

rear office and unattached garage located at 14611 Kilbourn, Midlothian, Illinois,

in the _____<u>Northern</u>_____ District of ____<u>Illinois, Eastern Division,</u>_____
there is now concealed a certain person or property, namely (describe the person or property to be seized)

SEE ATTACHMENT A

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

property that constitutes evidence of the commission of a criminal offense; or contraband, the fruits of crime, or things otherwise criminally possessed; or property designed or intended for use or which is or has been used as the means of committing a criminal offense.

concerning a violation of Title ___18___ United States Code, Section _1029_____

The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: _X_ Yes ___ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

**DEC 1 9 2002**                          at    <u>Chicago, Illinois</u>
Date                                              City and State

<u>Michael T. Mason, U.S. Magistrate Judge</u>          _____
Name & Title of Judicial Officer                    Signature of Judicial Officer

## AFFIDAVIT

I, Paul A. Meyer, being first duly sworn on oath, depose and state as follows:

1.    I am a Special Agent of the United States Secret Service and have been so employed for approximately one and one-half years. I am presently assigned to the Chicago office of the Secret Service.   I investigate financial crimes, including credit card fraud.   I have been trained in the investigation of fraudulent access device cases and in the use of computers, skimmers, encoders, scanners and other devices by people involved in the fraudulent use of access devices.

2.    This affidavit is submitted in support of Application for search warrant for evidence of violations of Title 18, United States Code, Section 1029(a)(1).

3.    The facts set forth below are based on my own personal knowledge, my review of investigative reports prepared by other law enforcement officers, and information provided by other law enforcement officers.   Since this affidavit is submitted for the limited purpose of establishing probable cause, this affidavit does not contain a detailed account of everything that I know or other law enforcement officers know about the individual and events described herein.   The affidavit sets forth only those facts, which I believe are necessary to establish the required probable cause.

4.    On 10/10/1997, Detective Brad Borys, Lansing Police Department,    provided    the    following    information    regarding

counterfeit American Express credit cards:

a.    An  individual  cooperating  with  a  local  Police Department (hereinafter the "CI") related that an individual known to the CI as "Ro" was selling American Express credit cards for approximately $1,000 USC, with a credit limit of approximately $10,000.

b.    The CI related "Ro" would even emboss the buyer's real name on the credit card.

c.    The CI mentioned "Ro" showed him a blank green American Express credit card without the account number or the card member's name embossed on the credit card.

d.    The CI recalled the front of the credit card had four numbers printed on the right side.  The CI stated the numbers were "8673".

e.    According to the CI, "Ro" was arrested on federal charges for cloning cellular telephones.

f.    Johnson provided the following description for "Ro": Male/Black; 20-30 years old; 5'6" to 5'8"; 150-160lbs; Black hair, Box cut; wears a Mason ring; Possible telephone numbers: Pager: 312/370-1480; Work: 708/389-1609 IDH Financial Services, Midlothian, IL

g.    On 11/12/1997,Secret Service conducted MCI record check reference Rolando Shackelford.  Shackelford is of record with this  Agency  under  case  number  201-779-129084.    Subject investigation  is  for  cloning  cellular  telephones  at  L&A

Communications, 274 E. 159th Street, Harvey, IL.

5.  On 10/14/1997, Joseph Gannon, Chief Investigator, American Express, World Financial Center, New York, NY, 212/640-2605, provided the following information concerning counterfeit American Express credit cards with four digit batch code (4DBC) of 8673. Gannon also informed the Secret Service that on 8/12/1997, Best Buy, 1201 Hammond Drive, Atlanta, GA, seized a counterfeit American Express credit card with the 4DBC OF 8673, Account number 3739-865579-81007, embossed in the name John Williams.

6.  On 11/12/1997, Joseph Gannon relinquished custody of five (5) counterfeit American Express credit cards with 4DBC OF 8673. Examination of the above-mentioned credit cards indicates two (2) generations of cards.   While examining the credit cards, the following investigative lead was developed:

a.  On the upper right corner of the cards ULTRA CARD II is printed.   ULTRA CARD II is the copyright trademark for digital identification card systems produced by Fargo Electronics, Eden Prairie, MN.

7.  On 11/12/1997, Jeffrey D. Upin, Legal Counsel, Fargo Electronics, 7901 Flying Cloud Drive, Eden Prairie, MN, 612/941-9470, provided the following information:

a.  Upin explained the ULTRA CARD II is white plastic card stock with a mag strip on the reverse side of the card which is used in conjunction with a digital computer printer that allows the user to produced photo identification cards with digitize

photographs.

8.   On January 16, 1998, officers of the Matteson Police Department, Matteson, IL, were dispatched to the Foot Locker Store, Lincoln Mall, Matteson, IL, to investigate the fraudulent use of a counterfeit American Express credit card.

a.   Officers learned from an employee of the Foot Locker Store that a Black/Female, later identified as Angela Powell, used an American Express Credit card, account number 3732 294065 130065, embossed in the name Kristie Savage, to purchase $393.26 in merchandise.

b.   Powell presented the above-mentioned credit card and signed the credit card receipt.

c.   Powell was accomplished by a Black/Male later identified as Rolando Shackelford.

d.   Powell and Shackelford were observed leaving the store together, with Shackelford carrying the bag with the merchandise.

e.   After Powell and Shackelford left the store, the manager became suspicious of the transaction and telephoned American Express for name and account number verification.

f.   Manager learned the name and account number did not match--the above-mentioned account number is listed to Jeremy A. Stone.

g.   Powell and Shackelford were observed walking through the lower level of the mall.

h. Powell and Shackelford were then observed walking in different directions.

i. Powell was seen walking towards the upper level in the direction of Carsons.

j. Shackelford was observed exiting the mall, carrying the bag with the merchandise via the lower level west parking lot exit.

k. Shackelford was observed entering the mall less than two (2) minutes later without the merchandise.

9. On January 16, 1998, officers of the Matteson Police Department, Matteson, IL, arrested Rolando Shackelford and Angela Powell at the Lincoln Mall for fraudulent use of counterfeit American Express credit cards.

a. Powell was in possession of two (2) counterfeit American Express credit cards with the 4DBC OF 8673 embossed in the name Kristie Savage.

b. Shackelford was in possession of one (1) counterfeit American Express credit card with the 4DBC OF 8673 embossed in the name Robert Davis.

c. Examination of the above-mentioned cards revealed the trademark "ULTRA CARD II".

10. On 1/11/1998, Angela Powell was interviewed and admitted that Shackelford had provided her with the fraudulent credit card in the name of Kristie Savage, which she had used to purchase the merchandise at the Foot Locker Store.

11. Powell further told the agents that Shackelford drove a Grey Mercedes to the Lincoln mall parking lot. On January 22, 1998, a search warrant was executed on this vehicle which was opened with keys obtained from Shackelford. Among the items found in the vehicle were two computers. A subsequent search executed in February 1998 of these computers uncovered a computer file containing an image of the front of an American Express card with 4DBC of 8673 and another computer file containing an American Express Account number which had been embossed on a counterfeit American Express Card.

11. On December 19, 2002, at approximately 6:05 a.m., Secret Service agents including this affiant and local police officers knocked on the door at 14611 Kilbourn in Midlothian, Illinois. This affiant had spoken to Federal Probation Officer Jennifer Taborski on December 18th, and she informed me that Shackelford had been on probation until October 18, 2002 and lived with his wife at 14611 Kilbourn in Midlothian. Officer Toborski had added that this address is where she had done her home visits with Shackelford and is where Shackelford told her he lived.

12. After knocking on the door, Franchon Foster answered the door, acknowledged that she was Shackelford's wife, and agreed to allow the agents to enter and search the home

to verify that Shackelford was not present.

13. Upon entering a room in the rear of this one floor ranch home, this affiant and the other agents observed the following in plain view: two plastic access card reading devices known as skimmers; one encoder for DSS satellite systems, four portable computers and three computer monitors, two lap top computers, three laser jet printers, one fax machine, two document scanners, multiple cameras, various check software programs, a manual typewriter, a shredder, a safe, and numerous open boxes containing documents.

14. The one area the defendant's wife refused to let us view was the unattached garage which is located behind the home.

15. In light of the defendant's wife's refusal to allow access to the garage, in light of the other evidence described herein, my experience tells me that there is probable cause to believe that additional evidence of access fraud will be found in the garage. Moreover, I am aware through my experience and training that people engaged in access device fraud store documents and devices relating to their fraud in safes in their homes.

16. I have spoken this morning with Secret Service Special Agent Eric Dickey. Agent Dickey has previous training

and experience investigating access device fraud investigations involving the use of skimmers, encoders, computers, printers and scanners. Agent Dickey and I are aware through our experience and training that skimmers, encoders, computers, printers, fax machines and scanners are among the items used to facilitate the encoding or re-encoding of magnetic strips on credit cards and to keep track of the fraudulent credit card account numbers which are used. Moreover, scanners, typewriters, cameras and computers are used in the manufacture of fraudulent identification cards and access devices. In addition, encoders for DSS Satellite systems allow unauthorized users access to a DSS system without paying the provider. DSS systems are satellite TV systems which allow access to numerous television channels. In order to legally get this access, an individual must pay an authorized DSS provider for access. The use of encoders to obtain unauthorized access is a violation of 18 U.S.C. 1029 because it is unauthorized access to DSS systems.

Based on the foregoing, I believe that probable cause exists that the two plastic access card reading devices known as skimmers; the one encoder for DSS satellite systems, the four portable computers and three computer monitors, the two lap top computers, the electonically stored data contained in the computers, the three laser jet printers, the one fax machine, the two document scanners,

the cameras, the various check software programs, the manual typewriter, the shredder, the safe, and the numerous open boxes containing documents, along with other documents, all contained within the rear office at the home, along with evidence of the above contained in the garage, contain fruits, instrumentalities and evidence relating to violations of Title 18, United States Code, Section 1029.

FURTHER AFFIANT SAYETH NOT

_____

Paul A. Meyer, Special Agent

United States Secret Service

Signed and Sworn to before me
this __19th__ day of December, 2002

_____

United States Magistrate Judge